# EXHIBIT P



STARK&STARK
ATTORNEYS AT LAW

OFFICE: 993 LENOX DRIVE LAWRENCEVILLE, NJ  08648-2389
MAILING:  PO BOX 5315 PRINCETON, NJ  08543-5315
609-896-9060 (PHONE) 609-896-0629 (FAX)
WWW.STARK-STARK.COM

DONALD B. BRENNER
DIRECT DIAL NUMBER
609-895-7330
DIRECT FAX NUMBER
609-896-0629
E-MAIL
dbrenner@stark-stark.com

December 18, 2020

*VIA E-MAIL ONLY*

Mr. Scott Richman, Regional Director
ADL New York/New Jersey
605 Third Avenue
New York, NY 10158-3560

**Re:    Response to your November 23, 2020 letter to The Colony Cooperative Board of
         Directors**

Dear Mr. Richman:

We represent the Colony Cooperative.  We are in receipt of your letter dated November 23,
2020.  The Board of Directors of the Colony Cooperative is very familiar with the outstanding
work performed by, and whole-heartedly supports the mission of, the ADL.  It is for that reason
that the Board is so shocked that you would send a letter to the Board that is filled with
misstatements and factual inaccuracies.  The Board is deeply disappointed to receive such a letter
from you and hereby responds as follows:

1.    The entire fabric of your letter is woven from your understanding that, "for at least 16
      years prior to installation of new elevators," there has been a policy or practice at The
      Colony Cooperative to have elevators on "Shabbat mode" and to have staff assist
      observant Jews with the operation of the elevators on Shabbat.  This statement is simply
      wrong.  Prior to September 2019, The Colony Cooperative never had a Shabbat elevator.
      At the May 2019 annual meeting of shareholders and election of directors, the Board of
      Directors included a non-binding vote for all shareholders in the cooperative regarding
      whether to temporarily designate one of the building's elevators as a Shabbat elevator
      from sunset each Friday to sunset each Saturday.  The discussion that took place that day
      made clear that, if the Board decided to implement a Shabbat elevator, it would be on a
      temporary basis as a trial run.  The non-binding vote was very close: out of a total of
      almost 300,000 shares that were eligible to vote, 90,290 shares voted in favor of
      implementing Shabbat mode elevator service and 89,835 shares voted against
      implementing the Shabbat mode elevator service. The Board then decided to designate
      the service elevator as the Shabbat elevator on a trial run basis.  That trial run service
      started in September 2019 and was to run until December 31, 2019.

NEW JERSEY  •  PENNSYLVANIA  •  NEW YORK

STARK&STARK
ATTORNEYS AT LAW

2.      The Shabbat elevator service ran until the end of 2019 with a schedule that averaged 10 hours per week.  It turned out that only about 12 families or 2.5% in the building use the Shabbat elevator out of 484 families living in the building.  While operating the Shabbat elevator on this schedule, the Board began getting resident complaints about delays in getting packages to their units and service interruptions. There were increased calls about mechanical problems with the doors to the elevators that required repairs by the elevator maintenance company.

3.      In January, the Board met with the Shabbat Elevator Committee to discuss with and inform the Committee of the new elevator guidelines adopted by the Board in response to the foregoing complaints by residents and increasing elevator service calls. The Board modified the trial run for the Shabbat elevator by extending the Shabbat elevator for an additional 90 days with the following conditions:

   a.      There would be only 5 hours per week allocate to the Shabbat elevator;
   b.      Of that 5 hours, 2 hours would be allocated for Shabbat use on Friday nights in a one-hour block and three hours would be allocated on Saturdays in one-hour blocks -- morning, afternoon and evening; and
   c.      The elevators were reprogrammed to operate as express going up and to stop at the designated floors on the way down.

4.      Despite the reduction in hours, service interruptions and complaints continued.  While the Board was certainly sensitive to the needs of the very small number of families using the Shabbat elevator, the Board felt those needs were outweighed by the needs of the other roughly 472 families in the building who do not use the Shabbat elevator service who were being inconvenienced by the service delays and interruptions. COVID severely exacerbated the problem because of restrictions as to how many people can ride in the elevator cabs at one time.  In addition, the elevator doors are the original elevator doors installed when the building was first constructed.  They are aging and will cost approximately $1 million to replace. Once the building began operating the elevator on Shabbat mode, the Board saw a noticeable increase in the number of service calls to the elevator maintenance company attributable to extra wear and tear on the elevator doors.

You make a big issue about how staff working at the Colony have been told not to assist those residents needing help with operating the elevators on Shabbat "as they had previously been permitted to for at least 16 years prior to installation of new elevators…." Once again, you are working with inaccurate information.  Prior to the September 2019 implementation of the Shabbat elevator trial run, the Colony has **NEVER** had a policy of allowing its staff to assist residents with operation of the elevators on Shabbat.  The reason is that The Colony is a "white glove" building which provides services such as a doorman and grocery delivery services.  The Colony does not employ sufficient staff to assist roughly 12 families out of the 484 families in the building with operating the Shabbat elevator.  That is why the staff were told not to leave their posts for requests outside the scope of their normal responsibilities. The Board is being responsive to the needs of the vast majority of the residents of the Colony who do not use the Shabbat elevator and simply want their elevators to be available to them when they need them.

2

STARK&STARK
ATTORNEYS AT LAW

Employees at the Colony are proud unionized employees. As such, they are covered by a collectively negotiated contract. This contract contains negotiated disciplinary procedures. To suggest that any employee who presses the elevator buttons would be terminated is simply ridiculous.

The members of the Shabbat Committee could not impose their will on everyone else in the building and began attacking and smearing the Board. The Board investigated the unfounded statements made by some on the Shabbat Committee and repeated in your letter that, "for at least 16 years" staff from The Colony have been providing assistance on Shabbat and other holidays to observant Jews in the building. It turns out that a former Board member who happens to be an observant Jewish man, made private arrangements with staff to help him with pushing buttons and operating the elevator on Shabbat. He may or may not have "tipped" the staff a few dollars to provide him with this accommodation. These arrangements were not sanctioned or approved by the Board. The Board was not involved in those arrangements. Until September 2019, the Board never had any policy allowing staff to provide such assistance. There is no truth to the statement that such a policy or practice existed at the Colony for 16 years.

Based on inaccurate information, you have accused the Board of discriminating against observant Jews living in The Colony. Nothing could be further from the truth. It is hurtful and outrageous for you to accuse the Board of anti-Semitic, discriminatory motivations in terminating the trial run of the Shabbat elevator initiative. Many Jewish people live in The Colony and serve on the Board. What you have failed to consider is that the Board had a perfectly legitimate business reason for doing what it did. The people who complained to you and maligned the Board members are thinking only of themselves. They chose to live in a building with 484 families. The governing documents of The Colony do not promise Shabbat elevator service. Until September 2019 when the Shabbat elevator program was implemented on a trial basis, there was never any policy allowing a Shabbat elevator or providing staff to assist in operating elevators. You overlook the fact that those other 472 families have needs and interests that are different from the handful of residents who are being inconvenienced by the termination of the Shabbat elevator service. The fact that the interests of 12 families are outweighed by those of 472 other families does not mean the Board is acting in a discriminatory manner.

Your letter was well–intentioned but based upon an erroneous understanding of the facts. You have wrongfully taken sides and unfairly vilified a Board made up of volunteers who are doing their best to promote what is in the best interests of all shareholders in The Colony Cooperative. We, therefore, request that ADL rescind and withdraw its letter. Thank you.

Very truly yours,

STARK & STARK
A Professional Corporation

By:   */s/ Donald B. Brenner*
        DONALD B. BRENNER

DBB/lmb

4821-5227-9508, v. 1