UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PAUL KURLANSKY, HELAINE KURLANSKY, MARTIN EPSTEIN, HERBERT ENNIS, JUDITH ENNIS, MORDECAI APPLETON, HENRY KATZ, LILA KATZ, JOAN KATZ, GLENN KATZ, and JUDITH SINGER,

                            Plaintiffs,

    -against-

1530 OWNERS CORP.; MOE MARSHALL, ELLEN GERBER, KENNETH LIPKE, CAROL LICHTBRAUN, JUSTIN WIMPFHEIMER, PATRICIA DI CONSTANZO, and MARK O'NEILL, Individually and as Members of the Board of Directors of 1530 Owners Corp., and; FIRSTSERVICE RESIDENTIAL,

                            Defendants.

**DECLARATION OF JUDITH ENNIS PURSUANT TO 28 U.S.C. § 1746
IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, Judith Ennis, hereby declare under penalty of perjury:

    1.    I am a plaintiff in the above-captioned proceeding and I am a resident of the Colony in Fort Lee, New Jersey, where I have been living with my husband, Mr. Herbert Ennis, for the past six years. We reside in the Colony's North Tower in apartment 5A, and as such, I am familiar with the fact that the Colony's service elevators are equipped with a Sabbath mode that allows the elevators to be pre-programmed to stop at certain floors, obviating the need for any button pushing. The Colony's Sabbath elevator program was approved by a majority of the Colony's shareholders on May 19, 2019, but was then terminated by the Colony's board of directors. During the period of time in which the Sabbath elevator was operational, I used it weekly. I am also familiar with the Colony's longstanding practice of assisting observant Jewish residents with the elevators on the Sabbath and certain Jewish holidays when there is no Sabbath

elevator—a service that I and my husband likewise utilized, but has now been scuttled.  I submit this Declaration in support of Plaintiffs' Application for Preliminary Injunction.

2. As an observant Jew, my religious beliefs are informed by thousands of years of Jewish tradition.  Part of my strongly-held religious beliefs is the primacy of *halakha*, or the Jewish legal system, which establishes a framework for my entire life.  A second core element of my beliefs is *kehillah*, or community, and the importance of joining together with members of my community to pray, study, and worship, to mourn at sad times and to celebrate in times of joy.

3. A core part of my adherence to Jewish law is my observance of the Sabbath, the Jewish day of rest, which spans from Friday evening until Saturday night.  On the Sabbath, and certain Jewish holidays, many observant Jews refrain from certain activities, including the use of electronic and certain mechanical devices.  For example, many observant Jews, including myself, do not press elevator buttons on the Sabbath and certain Jewish holidays.  Doing so would violate my sincerely held religious beliefs.

4. My husband has advanced Parkinson's disease, and by early 2016, his condition had deteriorated to the point that he was no longer able to use the stairs.  Over the course of this past year, his condition has worsened further.  He uses a cane now, and we have ordered a wheelchair for him to use.

5. Before the Colony adopted the Sabbath mode for the new service elevators, my husband and I arranged with the building staff for assistance with the elevators when attending synagogue during the Sabbath, and we would provide a monetary tip to the staff who assisted us.  The staff was always very accommodating, and we never experienced any difficulty in seeking

staff assistance with the elevators. This service allowed us to come and go as we pleased during the Sabbath, and thus provided us with flexibility and dignity in fully observing the Sabbath.

6. In March 2019, I was designated to speak about the importance of a Sabbath elevator especially for people like my husband. Mr. Marshall asked to provide a "brief" welcome to the residents after which he would allow the Committee to give their presentation. Mr. Marshall instead proceeded to speak for forty minutes. Only after certain residents requested that Mr. Marshall yield the floor to the Committee did Mr. Marshall finally relent. I described my husband's disability to the Board and the importance of a Sabbath elevator. By the time I began my presentation, residents were losing patience.

7. When the Sabbath elevator program was discontinued in July 2020, we received very little notice from the building that the program was being terminated—the program was terminated on July 24, 2020, the eve of the Sabbath, via a memorandum sent to all shareholders. Later, immediately before the Jewish High Holidays, a Colony staff member notified certain residents that staff had been directed not to provide elevator assistance to observant Jewish residents on the Sabbath and other Jewish holidays.

8. The Board's discriminatory policy of prohibiting staff from pressing elevator buttons for Sabbath observant Jews has caused me deep humiliation. On a recent Sabbath afternoon, I walked with other Sabbath observers to the elevator area, hopeful that someone would press the buttons for us. I was encouraged when a staff member—who had previously assisted me—approached the elevator. As the staff member passed, I praised him for his past assistance. But because of the Board's new policy, the staff member walked right past us into the elevator and declined to push the buttons for us. The Board's new policy of forbidding staff from helping me with the elevator merely because I am a Jew who observes the Sabbath is

hurtful.  Every Sabbath, I re-experience the stigma and shame of knowing that staff must target me for disfavored treatment by virtue of my faith.

9. Due to my husband's disability and the Colony's actions, I now rarely attend synagogue on the Sabbath.  While Martin Epstein hired someone to assist observant Jewish residents with getting up and down the elevator, the window of time that he is available is too narrow for me, given my husband's disability.  I care for my husband in the mornings, and we cannot guarantee that he or I will be ready in the morning to take the elevator at the current time that is offered.  The time window that a Sabbath elevator offers is far more convenient for us than the current arrangement organized by Mr. Epstein, which essentially imposes a set time.  If the Sabbath elevator was in operation, I could come out to the hall when I am ready and get on when it comes.

10. Apart from the lack of flexibility which makes the current arrangement inadequate, hiring an individual separately who is not an employee of the building is simply less reliable than Colony staff assistance with the elevators.  This is because there is always a large number of Colony staff members working in the building at any given time.  If the non-employee that we hire to assist us fails to arrive on time, or at all, we are left without any alternative for leaving the building to attend synagogue without violating our sincerely held religious beliefs—as Sabbath observers, we do not use telephones on the Sabbath.  If the building staff assisted, reliability would be less of a concern because multiple staff members would be available to assist us.  Further still, if the Colony reinstated the Sabbath elevator program, reliability would be even less of a concern.  With the Sabbath elevator, barring a malfunction, we would know exactly when the elevator would be travelling to us.

11. If a functional Sabbath elevator were restored, my husband and I would be able to once again attend synagogue at the time of our choosing. Without a Sabbath elevator, my husband and I cannot join in the company of friends and other community members, which has negatively impacted our Sabbath observance and sense of community and camaraderie.

12. I, therefore, respectfully request that this Court grant Plaintiffs' application for a preliminary injunction.

13. I declare under penalty of perjury that the foregoing is true and correct. Executed on June 18, 2021.

_____
JUDITH ENNIS