UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PAUL KURLANSKY, HELAINE KURLANSKY, MARTIN EPSTEIN, HERBERT ENNIS, JUDITH ENNIS, MORDECAI APPLETON, HENRY KATZ, LILA KATZ, JOAN KATZ, GLENN KATZ, and JUDITH SINGER,

         Plaintiffs,

-against-

1530 OWNERS CORP.; MOE MARSHALL, ELLEN GERBER, KENNETH LIPKE, CAROL LICHTBRAUN, JUSTIN WIMPFHEIMER, PATRICIA DI CONSTANZO, and MARK O'NEILL, Individually and as Members of the Board of Directors of 1530 Owners Corp., and; FIRSTSERVICE RESIDENTIAL,

         Defendants.

## DECLARATION OF SUSAN JOFFE PURSUANT TO 28 U.S.C. § 1746
## IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Susan Joffe, hereby declare under penalty of perjury:

  1.  I am a resident of the Colony in Fort Lee, New Jersey, where I have been living with my husband, Samuel Joffe since June 2019.

  2.  I am familiar with the fact that the Colony's service elevators are equipped with a Sabbath mode that allows the elevators to be pre-programmed to stop at certain floors, obviating the need for any button pushing.  The Colony's Sabbath elevator program was approved by a majority of the Colony's shareholders on May 19, 2019, but was then terminated by the Colony's board of directors.  During the period of time in which the Sabbath Elevator was operational, my husband and I used it weekly.  I am also familiar with the Colony's longstanding practice, in the absence of a Sabbath elevator, of assisting observant Jewish residents with the elevators on the

Sabbath and certain Jewish holidays by pressing buttons for the residents—a service that I and my husband likewise utilized, but which has now also been scuttled.  As such, I am familiar with the facts and circumstances set forth herein.  I submit this Declaration in support of Plaintiffs' Application for Preliminary Injunction.

3.  Like the Plaintiffs in this case, I am an observant Jew and my religious beliefs are informed by thousands of years of Jewish tradition.  I hold a sincere religious belief in the primacy of *halakha*, or the Jewish legal system, which establishes a framework for my entire life.  A second core element of my beliefs is *kehillah*, or community, and the importance of joining together with members of my community to pray, study, and worship, to mourn as a group during sad times and to celebrate in times of joy.

4.  A core part of my adherence to Jewish law is my observance of the Sabbath, the Jewish day of rest, which spans from Friday evening until Saturday night.  On the Sabbath, and certain Jewish holidays, many observant Jews refrain from certain activities, including the use of electronic and certain mechanical devices. For example, many observant Jews, including myself, do not press elevator buttons on the Sabbath and certain Jewish holidays.  Doing so would violate my sincerely held religious beliefs.

5.  On May 19, 2019, shortly before we moved in to the Colony, a majority of the Colony's shareholders voted to approve the Sabbath elevator program.  The program was implemented in September 2019, and it allowed us to ride the elevator without staff assistance—all we needed to do was wait by the elevator until it came to our floor and then we could come and go as we pleased.  This greatly enhanced our quality of life, our freedom of movement, and our observance of the Sabbath.

6. The Colony's Board of Directors sent a Termination Memo to all residents, terminating the Sabbath elevator program in July 2020, and then on September 16, 2020, they prohibited the Colony staff from pressing the elevator buttons for Sabbath observers.

7. On September 18, 2020, I emailed the Colony's management company, the Colony's counsel and Mr. Marshall, asking the Board to reverse its decision terminating the Sabbath elevator program and its order prohibiting the long-standing practice of staff button pushing.  Mr. Marshall and the Board refused to make any changes.

8. Mr. Joffe and I then hired an attorney on behalf of the Sabbath elevator committee.  On October 30, 2020, our former counsel sent a letter to the Board describing the discrimination we faced and our right to seek legal relief.  The Board did not respond to this letter.  On November 10, 2020 the Colony's management company, Firstservice Residential ("FSR") sent a letter to the entire shareholder body on behalf of the Board, alleging that the Sabbath elevator committee shared a copy of the October 30 Letter with members of a building social group.

9. Together with other Sabbath observant residents, we proceeded to contact the Anti-Defamation League ("ADL"), who sent a letter, dated November 23, 2020, to the Board and FSR condemning the Board's discriminatory conduct.

10. On November 24, 2020, our former counsel forwarded his October 30 letter to FSR, and inquired if it was true that FSR was involved in the instruction to staff not to push buttons for the Sabbath Observant Residents, and whether the reason for the change in policy was related to the employees' collective bargaining agreement.  FSR did not respond.

11. On December 16, 2020, Mr. Joffe and I filed a complaint with the Division on Civil Rights ("DCR") against 1530 Owners Corp.  Our complaint remains under investigation by

the DCR. In the Board's response to our complaint, it conceded that it terminated the Sabbath elevator service and instructed the staff not to assist Sabbath observers.

12. On February 24, 2021, Mr. Marshall retaliated against us. He called us out by name and apartment number in a Board meeting open to all shareholders. During that meeting, Mr. Marshall told everyone that we filed a complaint against the Colony. He also said that the investigation and the Sabbath elevator committee's efforts were costing shareholders $10,000 in legal fees, which he described as "a waste of money," and stressed that shareholders should "know where [their] money is going." This was not an isolated occurrence. In a shareholder meeting on April 7, 2021, Mr. Marshall told shareholders that Sabbath elevator related legal fees were costing shareholders almost $20,000. He announced in that meeting that these costs would result in assessment against all shareholders, which could grow as high as $300,000 due to the "battle" with Sabbath observant residents.

13. We have faced aggression from other residents of the Colony as a direct result of Mr. Marshall's comments. To date, we have received three hate letters from shareholders. On May 13, 2021, we received one letter from an anonymous shareholder. The letter writer called us "an embarrassment and disgrace to Jews." Ex. A (May 13, 2021 Letter). We have also received two letters, dated May 18, 2021 and June 1, 2021, from an attorney shareholder. Ex. B (May 18, 2021 Letter), Ex. C (June 1, 2021 Letter). This shareholder has threatened legal action if we do not withdraw our DCR claims. These targeted letters have made us feel insecure and vulnerable in our own home.

14. Sometime after the Board prohibited the staff from pressing buttons for Sabbath observers, I experienced a particularly hurtful encounter. One Sabbath when I, and other Sabbath observant residents, returned from synagogue we were waiting by the elevator hoping

someone would assist us with pushing our designated floor buttons. A staff member, who has previously helped with elevator assistance, that was passing by ignored our need and did not press the button on our behalf.

15. Our complaint with the DCR is still pending and under investigation. My husband and I continue to be harmed every week because the Board refuses to reinstate the Sabbath elevator program as before and it continues to prohibit staff from assisting us on the Sabbath. We contribute to the cost of hiring someone to assist pushing the elevator buttons, but this is not a suitable replacement for either the Sabbath elevator program or the prior staff assistance. We cannot go to synagogue at the time of our choosing. We cannot attend communal and synagogue events that occur at times other than those designated for prayer services. We often cannot invite guests over for the Sabbath meal.

16. Without a Sabbath elevator, we are no longer able to visit the ill, a *mitzvah* often performed on the Sabbath. When the elevator was in operation, my husband and I enjoyed visiting fellow congregants that were unable to come to services due to their infirmity – particularly widows and widowers who live alone. Long Sabbath afternoons can feel quite lonely for our fellow congregants in these situations, especially because they are forbidden to use electronic devices or watch television. We brought them chicken soup, sang Sabbath songs, and spent meaningful time together recounting their past and sharing stories about family. These visits raised their spirits and greatly enhanced their Sabbath. Once the Sabbath elevator program was terminated, and without staff assistance which allows more flexibility to come and go, we are unable to make these visits on the Sabbath.

17. If a functional Sabbath elevator were restored, we and the Plaintiffs would once again attend synagogue at the time of their choosing. We would also be able to return to

enjoying a host of other activities with friends on the Sabbath. Yet without a Sabbath elevator, we cannot join in the company of friends and other community members, which has negatively impacted our sense of community and camaraderie.

18. I, therefore, respectfully request that this Court grant Plaintiffs' application for a preliminary injunction.

19. A true and correct copy of the May 13, 2021 Letter is attached hereto as Exhibit A.

20. A true and correct copy of the May 18, 2021 Letter is attached hereto as Exhibit B.

21. A true and correct copy of the June 1, 2021 Letter is attached hereto as Exhibit C.

22. A true and correct copy of our Proprietary Lease and Bylaws is attached hereto as Exhibit D.

23. A true and correct copy of the 1530 Owners Corporation 2019 Financial Statements is attached hereto as Exhibit E.

24. I declare under penalty of perjury that the foregoing is true and correct. Executed on June 17, 2021.

_____
SUSAN JOFFE